LOUISE H. STUART, Appellee, v. W. I. BEANS et al., Appellants, CENTRAL LIFE ASSURANCE SOCIETY (Mutual), Defendant.

No. 43075.

DECEMBER 17, 1935.

REHEARING DENIED APRIL 8, 1936.

McCoy & McCoy, and Parrish, Cohen, Guthrie & Watters, for appellants.

Clark, Byers, Hutchinson & Garber, for appellee.

Fred P. Carr, A. R. Shepard, and George F. Malcolm, for defendant Central Life Assurance Society.

DONEGAN, J.—The plaintiff, Louise H. Stuart, and the defendant W. I. Beans were formerly husband and wife, having been married on the 19th day of October, 1915. The marriage relation continued until the 24th day of May, 1932, when it was dissolved by a divorce. Both parties had been married prior to their marriage in October, 1915, and prior to their marriage each of them was possessed of considerable property. Among the assets possessed by the defendant W. I. Beans was a policy of insurance for $3,000 in the Central Life Assurance Society of the

United States in which the original beneficiary was his former wife. In December, 1916, the beneficiary was changed in accordance with the provisions of the policy, and the plaintiff, who was then Louise H. Beans, was designated as beneficiary. W. I. Beans was president of a bank in Oskaloosa, and he and the appellee resided there from the time of their marriage until May, 1925, when the appellee took up her residence in Des Moines and Beans continued to live in Oskaloosa. The evidence indicates that this was a voluntary arrangement due to the financial condition of Beans and the insufficiency of their income; that the appellee operated a rooming house while in Des Moines; that Beans continued to visit her while she lived there and until she moved to California in 1930; and that they continued a correspondence until about the time of the divorce. It is claimed by the appellee that subsequent to the marriage the defendant W. I. Beans became involved financially and was in need of ready money, and that the only person from whom he could obtain a loan was the plaintiff, who was then his wife; that on the 2d day of January, 1922, W. I. Beans borrowed $1,600 from her which was evidenced by a promissory note, due 5 years after date; that on the 4th day of April, 1924, he borrowed $400 from her for which he gave her his promissory note, due 6 months after date; that on the 9th day of April, 1924, he borrowed an additional $500 from her, giving her another note due in 60 days; and that no part of either principal or interest of any of the indebtedness evidenced by these notes has ever been paid. It is the further claim of the plaintiff that, after the execution and delivery of the said notes to her, and after she had moved to Des Moines, the said W. I. Beans delivered and pledged to her, as collateral security for the payment of the notes, the life insurance policy above referred to, and that the said policy is still in her possession. In the petition filed by her, the Central Life Assurance Society (Mutual), which it appears had assumed the liabilities of the Central Life Assurance Society of the United States, by which the policy was originally issued, was named as a party defendant. The plaintiff asked for judgment upon the three notes above referred to in the total sum of $5,622, with interest at 8 per cent from August 1, 1933, for the foreclosure of the pledged insurance policy, and for an order directing that the insurance policy be sold at special execution and the proceeds applied upon the payment of the notes sued upon.

This action was brought in Polk county, which was the residence of the insurance company. The defendant W. I. Beans moved for a change of place of trial alleging that he was a resident of Mahaska county; that the notes in question were made payable in that county; that the insurance company was not a necessary party to the action; and that the action should, therefore, be brought in Mahaska county. This motion was overruled. The insurance company filed an application alleging that said W. I. Beans, the insured, had executed and delivered to the insurance company a form of change of beneficiary designating his children, Zella Torbert and Hoyt Beans, as beneficiaries therein, and asked that the parties thus named as beneficiaries be made parties to this action. Zella Torbert and Hoyt Beans filed a motion asking that the court strike the insurance company as a defendant on the ground that it was not a necessary party to the action, and that the petition stated no cause of action against the insurance company. Hoyt Beans also filed a motion for a change of place of trial, and W. I. Beans renewed his motion for a change of place of trial. These motions to strike the insurance company as a defendant and for change of place of trial were overruled. The defendant W. I. Beans thereupon filed an answer denying generally the allegations of the petition; denying specifically that he was indebted to the plaintiff in any sum, that the plaintiff had any interest in the insurance policy, that said policy was ever pledged to the plaintiff, and that the plaintiff was rightfully in the possession of said policy; and alleged that the plaintiff had taken possession of said policy without his knowledge or consent. For further answer, W. I. Beans alleged that an accord and satisfaction under which all indebtedness owing by him to appellee had been settled and paid in full. The defendants Zella Torbert and Hoyt Beans filed answer denying the allegations of the petition, and also filed a cross-petition in which they alleged that the policy of insurance had been assigned to them by the defendant W. I. Beans, and that the said W. I. Beans had changed the beneficiary and designated them as the beneficiaries therein. The cross-petitioners asked that they be declared the owners and beneficiaries, and that the plaintiff be required to turn over and deliver the policy of insurance to them. In an answer to the cross-petition of Zella Torbert and Hoyt Beans, the plaintiff alleged that she had a just and valid claim to said policy, denied that the cross-petitioners had any

claim or interest therein, and denied all other allegations of the cross-petition.

The case was tried to the court as an equitable action, and an order and decree entered in favor of the plaintiff for the full amount claimed upon the said three notes, in the sum of $6209.18, with interest and costs, including attorney's fees. The court further found that the insurance policy in question had been pledged to the plaintiff as collateral security for the payment of the notes sued on; ordered that the said policy, or so much thereof as might be necessary to pay the amount due plaintiff, with interests and costs, be sold at special execution; directed the insurance company to pay the said policy to the purchaser of same upon such execution sale; and ordered that general execution issue for any balance of the judgment not satisfied by the sale of the insurance policy. From such order and decree the defendants W. I. Beans, Zella Torbert, and Hoyt Beans appeal.

Appellants devote considerable argument to the proposition that the court erred in overruling their motions asking that the name of the insurance company be stricken as a party defendant, and that the trial of the case be changed to Mahaska county. As this case is in equity and, as such, has been tried *de novo* in this court, and, as the conclusion reached by us sustains the essential claims of the appellants on the merits of the case, we deem it unnecessary to devote any time to the consideration of this proposition.

Briefly stated, the contentions of the appellants as to the merits of the case may be reduced to two propositions: first, that the indebtedness evidenced by the notes sued on has been settled and paid in full by an accord and satisfaction; and, second, that the appellee has no right or interest in the insurance policy in question. It appears without dispute in the evidence that on the 15th day of February, 1928, appellant W. I. Beans executed and delivered a deed to a 320-acre farm in Texas to the appellee. It is claimed by W. I. Beans that he and the appellee had discussed his indebtedness to her prior to the execution of this deed, that they had reached an agreement that he was to deed the Texas farm to her in full settlement of all his indebtedness to her, and this deed was pursuant to such agreement and constituted an accord and satisfaction and full settlement of the indebtedness evidenced by the three notes sued upon in this case. It is contended by the appellee, on the other hand, that, at the time this

deed was executed to her, or shortly prior thereto, appellant W. I. Beans visited her in Des Moines and told her, among other things, that he had not paid the taxes on his Texas land because he was not able to do so, and asked her if she did not want to pay them; that, in reply to this question of Beans, she said: "No, only on one condition that I will pay the taxes on the Texas land, that is if you deed it over to me that I will have credit for what I pay." In response to this statement of appellee, appellant W. I. Beans agreed that he would deed the land over to her, and the deed was made pursuant to this arrangement.

This being an affirmative defense, the burden of proof was, of course, upon the appellant W. I. Beans to establish the accord and satisfaction constituting the settlement relied upon by him. This burden, he claims he has sustained, by his own direct testimony and that of his daughter and codefendant Zella Torbert, supported by the testimony of the witnesses McLennan and Mayer and the inferences to be drawn from the facts and circumstances surrounding the transaction. McLennan, an attorney in Des Moines, drafted the deed to the Texas land, and Mayer had been the cashier of the bank in Oskaloosa of which appellant W. I. Beans had been president. The testimony of the appellant W. I. Beans was direct and positive and was to the effect that he and the appellee had at different times discussed a settlement of his indebtedness to her, that they had reached an agreement that he should deed the Texas land to her in full settlement of all his indebtedness to her, and that the deed was executed and delivered to her pursuant to this agreement. Zella Torbert testified that in the fall of 1927 she heard a conversation between her father, W. I. Beans, and the appellee in the directors' room of the bank at Oskaloosa, in which the question of deeding the Texas land was referred to, and that in such conversation she heard the appellee say, "Wellington, if you will deed me the Texas land we will call it square"; that W. I. Beans then said, "Louise, if I deed you that Texas land, will that clear all my obligations to you?" and that in reply to this question the appellee said it would.

Appellee positively denies that there was ever any such talk or agreement, and testifies that the only talk or agreement in regard to the Texas land was in Des Moines; that on that occasion W. I. Beans told her he had not paid the taxes on the Texas land because he was not able to do so, and asked her if she did

not want to pay them; that she told him she would do so on one condition only, that he deed her the land; that he agreed to this and the deed was executed and delivered to her pursuant to this agreement.

Mr. McLennan, the attorney who drafted the deed, testified merely as to what was said by the appellant W. I. Beans and the appellee at the time the deed was executed. This witness frankly stated that he remembered very little of the conversation. His testimony is positive on practically only one proposition, and that is that the arrangement for the deed had already been made before the parties came to his office, and that they did not tell him the reason why the property was being deeded to the appellee, or that, if they did, he had forgotten it. He testified that, according to his recollection, something was said in their conversation about W. I. Beans not caring to pay the taxes on the property and about indebtedness, but that he had no recollection as to who spoke about indebtedness or what indebtedness was referred to. The witness Carl Mayer testified to having heard conversations between W. I. Beans and appellee in the directors' room of the bank at Oskaloosa; that such conversations occurred "in the year 1927, '28 or '29," and that he understood from their conversations that Beans had deeded various properties for the notes which she signed for him at the bank. So far as the testimony of these two witnesses is concerned, we think it could be construed as supporting the contention of either party and that it is of very little assistance in determining as to which contention is correct. W. I. Beans contends that the facts and circumstances surrounding the whole transaction in reference to the deed to the Texas land, and the inferences to be drawn therefrom, fully support his contention. Appellee is equally insistent that all these matters establish the correctness of her position. It may be well, therefore, to consider briefly the respective contentions of the appellant W. I. Beans and the appellee, as to the facts and circumstances and inferences upon which they rely.

The circumstances upon which the appellee appears to rely, as supporting her claim that the deed was given to her on the condition only that she pay the taxes on the land thus deeded, are that W. I. Beans was an experienced businessman who had formerly been possessed of much property and had been president of a bank; that at the time the deed was delivered he knew that the notes were in the possession of the appellee; that he de-

livered the deed to the appellee without obtaining possession of the notes, and, as she alleges, without any demand or request for the notes. Appellee also contends that the testimony of the witness Mayer shows that it was his understanding from the conversations which he heard between appellant W. I. Beans and appellee that the deeds referred to in such conversations were given as security and that they were given for money for which appellee had given her notes to the bank, and that such conversations were therefore in regard to the deeds to the homestead, Clark county land, and Dakota land, and not in regard to the deed of the Texas land. She also contends that the testimony of the witness McLennan shows that taxes were mentioned in the conversation heard by him, and that the only taxes referred to could be the taxes on the Texas land. As we have already said, we think the testimony of these two witnesses, as to the conversations heard by them, can be construed in different ways, and that it does not lend any assistance in determining the truth of the respective contentions of the appellant and appellee. Aside from the testimony of these two witnesses, the facts and circumstances relied upon by appellee go merely to the inconsistency of the appellant W. I. Beans' contention, rather than to supporting the consistency of the claim made by appellee. While the failure of W. I. Beans to demand and receive possession of the notes before delivery of the deed may be inconsistent with business dealings between strangers, we think it cannot be overlooked that, at the time this deed was delivered, the appellee and Beans seemed to be on friendly terms. They were then man and wife, and, so far as the record goes, there does not appear to have been any thought of a permanent separation or anything to indicate that Beans did not rely upon her promise to return the notes to him, as testified to by him.

In considering the contentions of Beans in regard to the facts and circumstances surrounding the execution and delivery of the deed of the Texas land, we should bear in mind that such facts and circumstances must be considered as they existed at the time of the execution and delivery of the deed on February 15, 1928. The evidence shows that, at the time of the trial, Beans was 81 years of age. At the time of the delivery of the deed, he was therefore 75 years of age. Although he formerly had been a wealthy man and the president of a bank, the evidence shows that in February, 1928, the only property which he still owned

was the Texas land and whatever interest he had in the policy of insurance which, at that time, was in the possession of the appellee and which she claims had been pledged to her. If the appellee's contention that this insurance policy had .been pledged to her as security for the notes, and that the deed of the Texas land was for no other purpose and on no other condition except that she pay the taxes on the land, then Beans was making this deed of the last property which he possessed without any personal benefit to him. At that time the total amount due on the notes was approximately $5,000. The testimony of Beans is that he had made trips to Texas about once a year up to that time, that he was familiar with the land and its value, and that at that time this land was worth from $15 to $20 an acre, which would make the total value of the 320 acres from $4,800 to $6,400. There is no evidence of any other witness as to the value of the land. The evidence shows that some time after the deed had been delivered the appellee received an offer of $3,200 for this land, and, although this offer was later withdrawn, we cannot say that it is not a circumstance tending to show that this land had a very substantial value. The evidence further shows that the policy of insurance, which was then in possession of the appellee, was a paid-up policy, and that yearly dividends were paid thereon which, according to the statements made in argument and not denied, amounted to approximately $40 per year. The evidence further is that the taxes on the Texas land were somewhere between $30 and $40 per year, at no time exceeding the latter figure. If the only reason Beans had for deeding this land was his inability to pay these taxes, it seems somewhat strange that, in the conversation in regard to the taxes, the appellee did not suggest that the dividends on this insurance policy be applied for that purpose. As the Texas land was the only property, aside from any interest which he might have had in the insurance policy, which Beans still owned, and as the appellee appears not to have collected the dividends on the insurance policy up to that time, there would be no reason why Beans could not pay the taxes out of these dividends. As this case stands, the appellee is the owner of the Texas land, for which no consideration has been paid directly to W. I. Beans, and, so far as we can see, no personal benefit has been derived by him because of the deed to appellee. In this action the appellee has asked and obtained an order and decree directing the sale of the

insurance policy and the application of the proceeds of such sale to the payment of the notes, and, in addition thereto, an order for a general execution for any balance still unsatisfied by the sale of such insurance policy. The result is that appellee has a paid-up insurance policy for $3,000, which will no doubt bring approximately that amount when sold under her special execution; she has a judgment which, at the time the decree was entered amounted to $6,209.18 exclusive of costs and attorney's fees, and on which a general execution may issue for any balance remaining unsatisfied after the sale of the insurance policy; she has the 320 acres of Texas land, which the only direct evidence as to value states was worth from $4,800 to $6,400 at the time it was deeded to her; and W. I. Beans has nothing. We cannot believe that W. I. Beans deeded this Texas land to the appellee under the agreement for which the appellee contends. As there is no other reason appearing in the record to explain this transaction, except that shown by the evidence of W. I. Beans and Zella Torbert, and as we think this evidence, together with the facts and circumstances attending the transaction and the inferences deductible therefrom, is sufficient to sustain the appellant's contention that the deed to the Texas land was given to appellee in full settlement of the indebtedness evidenced by the notes sued on in this action, the order and decree of the trial court must be reversed.

As the appellee's only claim to the insurance policy is that it was pledged to her as collateral security for the indebtedness evidenced by the notes sued on in this action, our finding that this indebtedness has been settled and fully paid negatives any right or claim of appellee to retain such insurance policy. There being no controversy between the appellant W. I. Beans and the appellants Zella Torbert and Hoyt Beans as to their respective rights in and to said policy, the change of beneficiary and assignment asked by the appellants Zella Torbert and Hoyt Beans should be and is hereby recognized and established.

The order and decree of the trial court is, therefore, reversed, and the case remanded for order and decree in accordance with this opinion.—Reversed.

KINTZINGER, C. J., and all Justices concur.